UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WESTERN RESERVE MUTUAL
CASUALTY COMPANY,

     Plaintiff,

     v.                              Case No. 3:25-CV-108-CCB-SJF

NOAH'S ARCADE, LLC, et al.,

     Defendants.

## OPINION AND ORDER

Plaintiff Western Reserve Mutual Casualty Company sued Nickels and Dimes,

Incorporated, as well as Noah's Arcade, d/b/a Full Tilt, Ben Konowitz, and Ryan Hart,

requesting a declaratory judgment as to its obligations under a litigation insurance

contract. Plaintiff has now moved for summary judgment.

### BACKGROUND

In an ongoing civil action prior to this case on July 25, 2023, Nickels and Dimes,

Incorporated ("Underlying Plaintiff") sued Noah's Arcade, d/b/a Full Tilt, Ben

Konowitz, and Ryan Hart ("Underlying Defendants"), alleging several business-related

claims including service mark infringement, unfair competition, and cybersquatting

("Underlying Suit"). (ECF 36 ¶ 1, 3).[1] Most claims were based on allegations that

Underlying Defendants' use of the name "Full Tilt" and an associated logo (jointly

---

[1] The Court takes judicial notice of *Nickel and Dimes Incorporated v. Noah's Arcade d/b/a Full Tilt, Ben Konowitz, and Ryan Hart*, No. 3:23-CV-699-DRL-MGG (N.D. Ind. July 25, 2023). Fed. R. Evid. 201(c)(1).

referred to as the "Trademarks") infringed on the rights of Underlying Plaintiff, which alleged that it holds United States Service Mark registrations for the "TILT," "TILT STUDIO," and "TILTED 10" marks. (36 ¶ 8).

Plaintiff Western Reserve Mutual Casualty Company ("Western Reserve") issued a commercial general liability policy to Underlying Defendants for the period from February 10, 2023, to February 10, 2024 ("Policy"). (*Id.* ¶ 15). The Policy provides coverage for "personal and advertising injury" under certain conditions which will be discussed below. (*Id.* ¶ 16).

Underlying Defendants notified Western Reserve of the Underlying Suit on December 18, 2023. (*Id.* ¶ 19). Western Reserve has defended the suit subject to a complete reservation of rights since January 2024. (*Id.* ¶ 20). On December 31, 2024, Western Reserve determined that the Policy did not apply to the claims at issue in the Underlying Suit and communicated this to Underlying Defendants. (ECF 1 ¶ 30).

In this case, Western Reserve has sued the parties in the Underlying Suit (jointly referred to as "Defendants"), requesting a declaratory judgment that the Policy does not cover any of the claims in the Underlying Suit. (ECF 1 ¶ 1). Western Reserve has now moved for summary judgment. (ECF 37).

STANDARD

**1. Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the

2

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v.*

3

*Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also*

*Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

**2. Declaratory Judgment**

Western Reserve has requested a declaratory judgment. "Declaratory judgment

actions serve an important role in our legal system insofar as they permit prompt

settlement of actual controversies and establish the legal rights and obligations that will

govern the parties' relationship in the future." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711

(7th Cir. 2002). The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., empowers a

federal court to issue a declaratory judgment "[i]n a case of actual controversy within its

jurisdiction" by "declar[ing] the rights and other legal relations of any interested party."

*Id.* § 2201(a). To properly request a declaratory judgment, a party must be able to show

that the "feared lawsuit from the other party is immediate and real, rather than merely

speculative." *Coco*, 302 F.3d at 712. In other words, "the facts alleged, under all the

circumstances, [must] show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759

(7th Cir. 2008) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007))). A

declaratory judgment has "the force and effect of a final judgment or decree and shall

be reviewable as such." 28 U.S.C. § 2201(a).

The Court finds that there is a substantial and immediate controversy between

the parties. Neither side disputes that the question of the Policy's applicability to the

Underlying Suit has immediate implications for the parties' decisions in that case. For

exactly this reason, the Underlying Suit has been stayed pending this case's resolution. *See* Joint Motion to Stay, *Nickel and Dimes Incorporated v. Noah's Arcade d/b/a Full Tilt, Ben Konowitz, and Ryan Hart*, No. 3:23-CV-699-DRL-MGG, ECF 67 (N.D. Ind. July 25, 2023) ("The parties believe that the resolution of the lawsuit [initiated] by Western Reserve will impact the disposition and likely resolution of this lawsuit"); *Id.* at ECF 68 (order granting stay). Thus, this dispute is "immediate and real, rather than merely speculative." *Coco*, 302 F.3d at 712. It is proper for this Court to evaluate the merits of Plaintiff's request for a declaratory judgment. *See* 28 U.S.C. § 2201.

### 3. Choice of Law

The parties agree that Indiana law applies to the Policy. (ECF 38 at 2; 41 at 3). *See Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 661 (7th Cir. 2021) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under Indiana law, insurance contracts are interpreted according to the general rules of contract interpretation. *Cotton v. Auto-Owners Ins. Co.*, 937 N.E.2d 414, 416 (Ind. Ct. App. 2010). Contract interpretation is a pure question of law. *Mid-Am. Salt, LLC v. D.J.'s Lawn Serv., Inc.*, 396 F. Supp. 3d 797, 806 (N.D. Ind. 2019) (quoting *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005)).

**ANALYSIS**

The parties disagree on whether any claims in the Underlying Suit are covered by the Policy. Counts I, II, and IV of the Underlying Suit complaint ("Underlying Complaint") allege that the defendants' infringing use of the "FULL TILT" service

marks[2] caused harm to Underlying Plaintiff. *See* (ECF 36-1 at 10) (Count I, directly alleging mark infringement); (*Id.* at 11, 13) (Counts II and IV, alleging federal and common law unfair competition through mark infringement).

The parties agree that, if those claims fall within the Policy at all, it is within the "Personal and Advertising Injury" provision. (ECF 38 at 1; 41 at 5). This section provides coverage against all claims of "personal and advertising injury" that are not otherwise excluded. (ECF 1-2 at 17). "Personal and Advertising Injury," is defined in relevant part as "The use of another's advertising idea in your 'advertisement'" or "Infringing upon another's copyright, trade dress, or slogan in your 'advertisement.'" (ECF 1-2 at 25).[3]

Here, there are two disputes about this language's application to the Underlying Suit. First, the parties debate whether the "trademark" category [4] falls directly within the general definition of "advertising injury," and is thus covered by the Policy. In the alternative, the parties dispute whether the claims in the Underlying Suit fall under the Policy's definitions of "advertising idea" or "trade dress."

---

[2] Although the Underlying Suit alleges "service mark infringement" while the Policy only mentions "trademark infringement," the parties treat the two terms as identical and interchangeable in this case. This reflects how the terms are generally understood. *See Comp-U-Tronix Disc. Radar Detectors, Inc. v. Landmark Elecs. Co.*, No. 90 C 6582, 1991 WL 236877, at *8 (N.D. Ill. Oct. 30, 1991) ("The court notes that there is a small difference between a service mark and a trademark. A service mark is used for services, and a trademark is used on goods. Both terms refer to a trade name. With respect to infringement, the same legal analysis applies to both marks."); *DeliverMed Holdings, LLC v. Schaltenbrand*, No. 10-CV-684-JPG-DGW, 2012 WL 13028117, at *17 (S.D. Ill. Oct. 15, 2012) ("The law is generally the same for trademarks and service marks, but is usually phrased in terms of trademarks. Therefore, the Court will use the terms trademark and service mark interchangeably in this order.").

[3] An "advertisement" is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purposes of attracting customers or supporters." (ECF 1-2 at 23).

[4] *See supra* note 2.

I.       **Whether trademark claims are covered**

In its definition of "personal and advertising injury," the Policy lists a variety of claims such as "copyright, trade dress, or slogan" but does not list trademarks. (ECF 1-2 at 25). Thus, the Policy would seem to exclude coverage for that category on its face. *See Harshman v. Heavilon*, 95 Ind. 147, 151 (1884) ("A familiar rule in the construction of contracts is that the express mention of one thing implies the exclusion of all others."). At the same time, the Policy *does* use that term in other parts of the contract. (ECF 1-2 at 17). This clarifies that the Policy recognizes "trademark' as a distinct category of claims but does *not* include that category within the "personal and advertising injury" coverage enumeration. *See id.*

Any remaining ambiguity is resolved by the Policy's exclusions section, which clarifies that "This insurance does not apply to . . . 'personal and advertising injury' arising out the infringement of copyright, patent, *trademark*, trade secret or other intellectual property rights." (ECF 1-2 at 17) (emphasis added).[5] Thus, trademarks are clearly excluded from the Policy's coverage—first by omission from the general

---

[5] It might appear odd or redundant that the Policy first defined advertising injury to include claims such as "copyright" only to exclude them later. But the next paragraph of the Exclusions section clears this up, clarifying that while *general* claims based on "copyright, patents, trademark, trade secret or other intellectual property rights" are excluded from coverage, claims based on the use of "copyright, trade dress, or slogan . . . in your 'advertisement'" are still covered by the Policy. (ECF 1-2 at 17). This second list does *not* include other previously excluded categories, such as "patent, trademark, or trade secret." (*Id.*). Thus, Arcade Defendants are partially correct that the "use in advertisement" clause is an "exception" to the exclusions clause in the Policy. (ECF 41 at 3). But that argument fails to extend to trademark claims, which are not listed in the "use in advertisement" section. Some excluded categories of claims, such as "copyright, trade dress, or slogan" *can* fall under coverage when the infringement claim applies to their use in an advertisement. (ECF 1-2 at 17). On the other hand, other categories, such as patents, trade secrets, and (most relevantly) trademarks, are excluded regardless of whether they are part of an advertisement or not. (*Id.*).

definition of "personal and advertising injury," and then by enumeration in the exclusions section. *See PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 723 (Ind. Ct. App. 2004) ("exclusions, exceptions, and limitations must be plainly expressed in the policy").

II. **Whether any Underlying Claims constitute "advertising idea" or "trade dress" infringement**

In the alternative, Defendants argue that the claims in the Underlying Suit can also be characterized as "advertising idea" or "trade dress" infringement. The parties do not dispute that these categories are included in the Policy's coverage, but they do dispute whether the Underlying Claims fall into these categories.

1. **"Advertising idea"**

Defendants are correct that claims based on "the use of another's advertising idea" are included in the Policy's coverage. (ECF 1-2 at 17). But there is no evidence that Underlying Defendants infringed on an advertising idea. Nowhere in the Underlying Suit did the plaintiff allege "advertising idea infringement." (ECF 1-3). The term "advertising" only ever appears in the context of *trademark* use in advertisements. (ECF 1-3). And, as discussed above, trademark claims are excluded from the Policy. *See supra* pages 7–8. Likewise, while there are advertisements in the record as evidence of Underlying Defendants' alleged infringement, these advertisements are only ever used to show the allegedly infringing trademark, not to show infringement of an "advertising idea." (ECF 49 at 3–5).

8

Defendants seek to get around this by arguing that "[a] family of trademarks is the product of a brand extension" and "a brand extension is an advertising idea." (ECF 41 at 4).[6] Defendants describe a "brand extension" as "fundamentally a marketing strategy designed to draw attention to new offerings by leveraging the established reputation and desirable qualities of an existing brand." (ECF 48 at ¶ 34). But even assuming Defendants are correct that brand extension strategies *motivate* companies to develop trademarks, that does not mean the two are identical.

Moreover, if Defendants were correct that all trademarks could fit inside the category of "advertising idea" through the concept of "brand extension," this reading would render the Policy's explicit distinction between the two meaningless. That violates Indiana rules of contract interpretation. *See Haub v. Eldridge*, 981 N.E.2d 96, 102 (Ind. Ct. App. 2012) ("all attempts to construe the language of a contract shall be done

---

[6] Defendants attempt to buttress their argument with expert testimony on marketing strategy. (ECF 40-2 at 2–6). But under Indiana law, expert testimony is inadmissible to determine the meaning of unambiguous contract provisions. *City of Lawrence v. W. World Ins. Co.*, 626 N.E.2d 477, 482 (Ind. Ct. App. 1993) (holding that offering expert testimony on contract interpretation is "an improper practice when interpretation of a contract is a matter of law for the court"); *Hamilton Airport Advert., Inc. v. Hamilton*, 462 N.E.2d 228, 235 (Ind. Ct. App. 1984) ("expert testimony on the matter of interpretation is improper" (citing *Federal Life Ins. Co. v. Sayre,* 195 Ind. 7, 142 N.E. 223 (1924))). Here, no party has argued that the contract is ambiguous, and the Court does not find it so. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003).

so as to avoid rendering any words, phrases, or terms ineffective or meaningless.").[7] There are no allegations of advertising idea infringement in the Underlying Suit, nor do any of the claims fit within that definition as dictated by the Policy.

### 2.    "Trade Dress"

Defendants argue that Underlying Plaintiff alleged trade dress violation in its complaint because the request for relief included language restraining the defendant from using "trade dress that falsely associates" the parties' businesses. (ECF 1-3 at 15).

But nowhere did the Underlying Suit's complaint assert that the defendants actually violated trade dress. It only mentions "trade dress" once. (ECF 1-3 at 15). And that sole appearance is part of a broad request for injunctive relief that also includes language requesting Underlying Defendants be enjoined from "engaging in any activity constituting unfair competition with Plaintiff," making misleading statements to the public, or authorizing third parties to use "false representation[s]." (ECF 1-3 at 15). These are all contained in the request for relief, and yet there are no allegations in the complaint regarding these activities either. This confirms that the "trade dress"

---

[7] *See also Cotton v. Auto-Owners Ins. Co.*, 937 N.E.2d 414, 416 (Ind. Ct. App. 2010) (holding that "there is a clear distinction between 'trademarks' and 'advertising ideas,'" and that "the concep[t] of 'trademark' cannot be shoehorned into an exclusions section as an 'advertising idea.'"); *Grinnell Mut. Reinsurance Co. v. S.B.C. Flood Waste Sols., Inc.*, No. 18 C 4922, 2020 WL 6940980, at *8 (N.D. Ill. Nov. 25, 2020) ("[I]n this case, the Policy clearly exempts trademarks from its coverage. As such, the underlying state complaint must show an advertising idea *beyond* trademark infringement. Rephrasing the same trademark allegation fails to do this."); *Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 745 F. App'x 314, 320 (11th Cir. 2018) ("Plaintiff's argument that the intellectual property exclusion does not apply because it states that '[u]nder this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement' is unpersuasive. That provision makes clear that 'other intellectual property rights' subject to exclusion should not be interpreted to include use of another's advertising idea; it does not limit the trademark infringement exclusion.").

language in the complaint is part of a general prophylactic request rather than an actual allegation about what Underlying Defendants did.

Defendants also argue that even if there are no specific trade dress allegations, Underlying Plaintiff's trademark claims are covered because "trade dress is a form of trademark." (ECF 41 at 11). But this would render the "trade dress" and trademark" distinctions in the Policy redundant by collapsing them together. *See Haub*, 981 N.E.2d at 102. Courts have repeatedly cautioned parties against circumventing contractual language by conflating trade dress and trademark claims.[8] Underlying Plaintiff does not allege trade dress infringement, nor does it list any elements of a trade dress infringement claim. Moreover, there is no allegation that the trade dress violation was made as part of an "advertisement," as required by the Policy. *See supra* note 5. There is no trade dress claim at issue, and the Policy's "trade dress" coverage does not apply.

III. **Whether advertising idea claims are barred by the Policy's "prior publication" exclusion clause.**

The Policy also excludes coverage for "personal and advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (ECF 1-2 at 17). Defendants argue that the first publication of the Trademarks occurred in May 2023, and thus after the policy period

---

[8] *See State Farm Fire & Cas. Co. v. Hines*, No. 21-2354, 2022 WL 7973331, at *1 (3d Cir. Oct. 14, 2022) (emphasizing that the insurer's "policies cover advertising injuries arising out of infringement upon another's *trade dress*, but they exclude injuries arising out of *trademark* infringement") (emphasis in original); *S. Bertram, Inc. v. Citizens Ins. Co. of Am.*, 657 F. App'x 477, 485 (6th Cir. 2016) ("Try as it might, [plaintiff] cannot simply rename [defendant's] trademark claims as trade dress claims and make them so"); *Bosworth v. State*, 274 N.E.3d 490, 496 (Ind. Ct. App. 2025) ("When Indiana law is silent on a question, we may look to guidance from an interpretation of a similar question by the federal courts").

began on February 10, 2023. (ECF 38 at 4; 41 at 8). But their only evidence for this is a screenshot of a Valentine's Day Facebook post that uses one of the Trademarks in a logo. (ECF 48 at 15; ECF 40-4 at 32). The Underlying Complaint alleges trademark infringement beginning "on or about June 6, 2022," and does not even discuss a Facebook post from May 2023. (ECF 1-3 at 8). And indeed, there is clear evidence in the record of the Trademarks being used in several other Facebook posts, going as far back as August 2022. (ECF 36-2 at 45, 65, 67). Defendants do not argue that the May 2023 post used a different mark or constituted a unique advertising injury in some way.[9] This establishes that the "first publication" of the Trademarks occurred before the policy period began on February 10, 2023, and thus falls within the Policy's prior publication exclusion. (ECF 38 at 4).

Counts I, II, and IV are excluded from coverage, because they rest on the core allegation of Underlying Defendants' "unauthorized use in commerce of the Infringing

---

[9] Defendants use an expert to testify that the "violation occurred in 2023." (40-2 at 5). But the question of when "publication" occurred is not an area where expert testimony is appropriate under Rule 702. *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987) ("Courts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend."). Moreover, the expert's methodology appears likely to be unreliable under Rule 702. For example, while he spends significant time explaining why the 2023 Facebook post *was* trademark infringement, he does not even address the *earlier* Facebook posts that Plaintiff cites. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 111 F.3d 528, 537 (7th Cir. 1997) (expert testimony that "fails to correct for salient explanatory variables" is unreliable and inadmissible).

Mark." The parties do not identify any other claims that plausibly fall under the Policy's terms.[10]

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff Western Reserve's motion for summary judgment. (ECF 37). The Court hereby **DECLARES** that: Western Reserve has no duty under the Policy to defend, indemnify, or pay any claim, settlement, judgment, verdict, or award on behalf of Defendants Noah's Arcade d/b/a Full Tilt, Ben Konowitz, and Josh Hart in connection with the claims, damages, and causes of action asserted in the Underlying Suit. The Clerk is **DIRECTED** to close the case.

SO ORDERED on May 19, 2026.

　　　　　　　　　　　　　　　　 _/s/Cristal C. Brisco_
　　　　　　　　　　　　　　　　 CRISTAL C. BRISCO, JUDGE
　　　　　　　　　　　　　　　　 UNITED STATES DISTRICT COURT

---

[10] Underlying Plaintiff also alleged "Cybersquatting," — that Defendants "registered and used" a domain name "confusingly similar to Plaintiff's [service marks]." (ECF 1-3 at 12) (Count III). But this claim is explicitly excluded by the Policy, which states in the "Domain Name" exclusion category that all coverage is barred "arising out of the unauthorized use of another's name or product in your . . . domain name" or "any other similar tactics to mislead another's potential customers." (ECF 1-2.18). This policy provision excludes Count III. And in any case, Defendants have effectively waived any arguments against Western Reserve's Motion for Summary Judgment with regard to the Policy's applicability to Count III, as they have not addressed or replied to Western Reserve's arguments. *See Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment"). Thus, summary judgment is automatically granted on Count III.

13